THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Lucas Lorenzo Bailey,       
Appellant.
 
 
 

Appeal From Aiken County
James C. Williams, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2003-UP-744
Submitted October 15, 2003  Filed December 
 17, 2003

AFFIRMED

 
 
 
Deputy Chief Attorney Joseph L. Savitz, III, of Columbia, 
 for Appellant. 
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, 
 and Assistant Attorney General W. Rutledge Martin, all of Columbia; and Solicitor 
 Barbara R. Morgan, of Aiken, for Respondent.
 
 
 

 PER CURIAM:  Lucas Lorenzo Bailey 
 appeals his conviction and sentence for homicide by child abuse, arguing the 
 trial court erred in denying his motion for a directed verdict.  We affirm. [1]   
FACTS AND PROCEDURAL HISTORY
Bailey was charged with homicide by child abuse 
 following the death of his girlfriends 16-month-old son, Devon.  During the 
 last two days of Devons life, Bailey and his girlfriend, Amy Hughes, were the 
 only adults alone with him.  The day before Devon died, he had a cold and Hughes 
 stayed home with him.  A little after midnight on the day Devon died, Bailey 
 fixed some food while Hughes stayed in bed.  Devon was in the kitchen with Bailey 
 when Hughes heard a loud noise followed by Devon crying.  She did not get up, 
 however, and Bailey put the child to bed with Hughes daughters, ages 5 and 
 6.  She later asked Bailey what happened and he said it was nothing.  During 
 the night, one of the girls reported Devon was vomiting.  Bailey immediately 
 volunteered to take care of the boy.  During the day, the child was very lethargic, 
 did not make any noise or reach out for his mother as he normally would, and 
 vomited all liquid he was offered.  Devon was unable to sit up on his own.  
 Hughes tried to give him medicine, most of which he vomited.  
Devon was in the bed with Bailey when Hughes 
 mother came for a visit.  Hughes heard a loud hitting sound, but initially thought 
 it was one of her daughters.  When she sent her daughter to get Devon, Bailey 
 refused to let the girl take Devon out of the room.  Hughes sent for the child 
 again later.  When he was brought into the room, he was worse.  He was droopy, 
 made no noise, and Hughes saw his eyes roll back into his head.  Hughes later 
 took a nap with Devon.  When she got up, he was still sleeping and she could 
 see he was breathing.  Hughes and Bailey played cards for a while and at about 
 5:00 p.m., Hughes left to take Baileys mother to the store in exchange for 
 gas money.  She testified if Devon was not feeling better when he woke up she 
 planned to take him to the emergency room.  When she left, only her daughters 
 and Bailey were alone with the child.  While she was out of the house, Bailey 
 called 911 and reported Devon was not breathing.  
When police arrived, Devon was dead and lying 
 face down on a toddler bed.  Hughes arrived a short time later.  Tim Carlton, 
 one of the deputy coroners, reported Bailey was behaving strangely when Carlton 
 was trying to take Devons medical history from Hughes.  Carlton became concerned 
 with the number of times Bailey entered the room during the interview.  Writing 
 on a piece of paper, Carlton asked Hughes whether someone had injured the child.  
 Hughes responded that she would call him later.  When Carlton interviewed Bailey, 
 he said Devon was a spoiled and crying baby.  Another deputy coroner found small 
 round bruises on Devons abdomen.   
An autopsy confirmed Devon was a homicide victim.  
 During the autopsy, the pathologist discovered several small round injuries 
 to various places on Devons head, indicating the child suffered several blows 
 to the head by a human fist.  Additionally, the child suffered at least two 
 blows to the abdomen, leaving small round bruises below his belly button.  The 
 pathologist reported the head injuries were so severe that his brain was flattened 
 out where it had swollen against his skull.  The head injuries would have caused 
 the child to vomit and be lethargic and could have resulted in death.  However, 
 the pathologist opined Devon bled to death within minutes of the final blunt 
 force blow to his abdomen, which lacerated his intestines and mesentery arteries 
 and veins.  After Hughes left, the only people home with Devon were his two 
 sisters and Bailey.  The pathologist testified a child would not have adequate 
 strength to cause the injury that killed Devon.  
LAW/ANALYSIS
In considering a motion for directed 
 verdict, the trial court is only concerned with the existence of evidence, not 
 with its weight.  State v. McHoney, 344 S.C. 85, 97, 544 S.E.2d 30, 36 
 (2001).  When a motion for a directed verdict is made in a criminal case where 
 the State relies exclusively on circumstantial evidence, [t]he trial judge 
 is required to submit the case to the jury if there is any substantial evidence 
 which reasonably tends to prove the guilt of the accused, or from which his 
 guilt may be fairly and logically deduced.  State v. Lollis, 343 S.C. 
 580, 584, 541 S.E.2d 254, 256 (2001) (quoting State v. Mitchell, 341 
 S.C. 406, 535 S.E.2d 126 (2000)).  On appeal from the denial of a directed verdict, 
 this court must view the evidence in the light most favorable to the State.  
 McHoney, 344 S.C. at 97, 544 S.E.2d at 36.  
Homicide by child abuse is committed 
 when a person, while committing child abuse or neglect, causes the childs death 
 under circumstances manifesting extreme indifference to human life.  S.C. Code 
 Ann. § 16-3-85 (2003).  The indictment against Bailey alleged he committed this 
 crime in that he was responsible for Devons welfare and inflicted injuries 
 to the childs abdomen resulting in exsanguination and, consequently, death. 

Although Bailey asks this court to find there was insufficient 
 evidence of his guilt of homicide by child abuse to submit the charge to the 
 jury, he has failed to provide us with a complete copy of the evidence presented 
 at trial.  He failed to provide complete copies of the trial testimony of several 
 State witnesses.  Additionally, he failed to provide us with the States exhibits, 
 with the exception of the 911 tape designated by the State.  At trial the State 
 presented photographs of the childs body at the crime scene and a diagram of 
 the home, none of which were provided to this court to review the trial courts 
 decision that sufficient evidence of Baileys guilt existed to submit the case 
 to the jury.  As appellant, Bailey had the burden of providing this court with 
 a record adequate for consideration of his issues on appeal.  State v. 
 Mitchell, 330 S.C. 189, 194, 498 S.E.2d 642, 645 (1998).
Although Bailey did not provide a complete record, 
 the evidence in the portion of the record before us is sufficient to support 
 the trial courts denial of his directed verdict motion.  Viewed in the light 
 most favorable to the State, the evidence demonstrates the child was not well 
 during his final two days and that he cried following a loud noise when he was 
 alone with Bailey.  After that event, he had difficulty keeping food down and 
 was lethargic, symptoms consistent with the head injuries the pathologist found.  
 Additionally, on the day Devon died, he was sleeping in his mothers bed when 
 she last saw him and, while she was away, died from an injury the pathologist 
 opined only took minutes to result in his death.  When police arrived, Devon 
 was not on his mothers bed, but was dead, face down on his toddler bed.  While 
 Hughes was away, Bailey was the only adult home with Devon and, according to 
 the testimony of the pathologist, the fatal injury was inflicted by an adult.  
 Furthermore, the fatal injury was a severe blow to the abdomen violent enough 
 to lacerate his intestines and mesentery arteries and veins.  This constitutes 
 substantial circumstantial evidence from which a jury could logically deduce 
 Hughes abused the child, causing his death, under circumstances manifesting 
 extreme indifference to human life.  Thus the trial court properly denied Baileys 
 motion for a directed verdict and submitted the case to the jury. 
 AFFIRMED.
STILWELL and BEATTY, JJ., and CURETON, A.J., concur.

 
 
 [1]        We decide this case without oral argument pursuant to Rule 
 215, SCACR.